E-FILED
Thursday, 18 December, 2025  02:59:14 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT "2"

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

|  |  |  |  |
|---|---|---|---|
| MID CENTRAL OPERATING ENGINEERS HEALTH AND WELFARE FUND, LOCAL 649, OPERATING ENGINEERS APPRENTICESHIP TRUST FUND, OPERATING ENGINEERS LOCAL 649 ANNUITY TRUST, CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS AND PARTICIPATING EMPLOYERS, ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS INDUSTRY ADVANCEMENT FUND, DOWNSTATE INFRASTRUCTURE AWARENESS AND ADVANCEMENT FUND, and UPGRADE FUND, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |  |
| Plaintiffs, | ) ) |  |  |
| v. | ) ) ) | No. | 24-cv-1309 |
| TYRO CONSTRUCTION, INC. | ) ) |  |  |
| Defendant. | ) |  |  |

STATE OF INDIANA    )
                                    )
COUNTY OF VIGO    )

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

NOW COMES the Affiant, JACKIE ELLINGER, and does hereby duly state under oath:

1.    I am the Bookkeeping Supervisor for the Mid Central Operating Engineers Health and Welfare Fund (the "Mid Central Fund").

2.    I am familiar with the allegations and circumstances involved with the above captioned lawsuit.

3.    The plaintiffs (collectively the "Funds") in the above captioned lawsuit include a group of employee benefit funds that provide health, welfare, retirement, training and other benefits to the employees of various employers who make contributions to the plaintiffs pursuant to collective bargaining agreements between employers and local labor organizations.

4.    The Mid Central Fund acts as a collection agent and point of receipt for the other named plaintiffs in the above-captioned case and coordinates collections of contributions and other amounts owed to them under applicable collective bargaining agreements.

5.    One of my responsibilities is to coordinate collections for the Mid Central Fund and any employee benefit fund, labor-management committees, or other plans, committees or funds for which the Mid Central Fund acts as a collection agent and point of receipt for contributions.

6.    The Mid Central Fund, as part of its standard operating procedures, keeps and maintains files and records on employers, which include:

      a.    copies of collective bargaining and other labor agreements signed by contributing employers;

      b.    contribution reports submitted by contributing employers;

      c.    a record of all hours of work reported and contributions which are paid to the Fund by each contributing employer; and

      d.    other employee payroll information submitted directly to the Mid Central Fund by the employees of contributing employers.

7.    The Mid Central Fund, as part of its standard operating procedures, routinely undertakes certain actions with respect to contributions and other amounts owed by contribution employers, which include:

      a.    reviewing and monitoring the reporting status of employers to ensure that hours worked by covered employees are timely reported and that required contributions are submitted in accordance with the terms of the collective

bargaining agreement, applicable trust agreements, and the Mid Central Fund's Contributions Collection Policy;

b.    confirming the calculation of contributions that are owed based upon employer's monthly reports;

c.    calculating the contributions that are owed by each employer based upon employee payroll information received and the applicable contribution rates when no monthly report is submitted; and

d.    for employers that fail to timely remit required contributions, calculating and assessing liquidated damages, interest, and any other amounts owed pursuant to the collective bargaining agreement, applicable trust agreements, and the Mid Central Fund's Contributions Collection Policy.

8.    The monthly reports and contributions owed by contributing employers are due to the Funds by the 15th day of the month following the month in which the hours were worked by the employer's bargaining unit employees.

9.    Any monthly reports and contributions not received by the 15th day of the month following the month in which the hours were worked are delinquent.

10.    Mid Central Operating Engineers Health and Welfare Fund has adopted a Contributions Collection Policy with respect to delinquent contributions.

11.    Under the Contributions Collection Policy of the Mid Central Fund, an employer is assessed liquidated damages in an amount equal to 15% of delinquent welfare and pension contributions.

12.    Under the Contributions Collection Policy, an employer is assessed with interest on delinquent welfare and pension contributions at a rate of 9% per annum, which accrues from the date the welfare and pension contributions are due until the contributions are paid.

13.    I have reviewed and am familiar with relevant files, records, and information (the "records") maintained by the Mid Central Fund in regard to Tyro Construction, Inc. ("Tyro Construction"), the defendant in the above captioned lawsuit.

14.     Tyro Construction is a party to an agreement titled Articles of Agreement Highway & Heavy between The Associated General Contractors of Illinois and International Union of Operating Engineers Local No. 649, effective April 1, 2020 through March 31, 2025 (the "collective bargaining agreement").

15.     Tyro Construction employs individuals who are also participants in the employee benefit plans administered by the Funds.

16.     Tyro Construction is required under the collective bargaining agreement and the trust agreements and policies of the Funds to prepare and submit reports each month to the Funds detailing hours of bargaining unit work performed by its employees and calculating contributions owed to the Funds for such hours of work.

17.     Tyro Construction is required under the collective bargaining agreement to pay contributions to the Funds for the hours of covered work performed by its employees each month.

18.     The Funds received payroll information from employees of Tyro Construction who performed covered work during the months of April and May of 2024.

19.     The hours of work performed by the employees gave rise to an obligation on behalf of Tyro Construction to pay contributions to the Funds.

20.     Tyro Construction did not submit reports to the Funds or pay contributions to the Funds for the hours worked by these employees for the months of April and May of 2024.

21.     Based upon the payroll information received by the Funds, the Mid Central Fund calculated that these employees performed 312.50 hours of work during the months of April and May of 2024.

22.     Under the collective bargaining agreement, the total contribution rate owed for each hour of work was $40.65.

23.     Based upon the payroll information received by the Funds, and the contribution rate owed for each hour of work under the collective bargaining agreement, the Mid Central Fund calculated that contributions totaling $12,703.12 are owed by Tyro Construction for the hours of work performed by these employees in April and May of 2024.

24.     Pursuant to the Contributions Collection Policy, Tyro Construction has been assessed and owes liquidated damages for unpaid welfare and pension contributions equal to 15% of these unpaid contributions.

25.     Defendant failed to pay and owes welfare contributions in the amount of $3,937.50 and pension contributions in the amount of $4,515.63.

26.     Mid Central Operating Engineers Health and Welfare Fund has calculated that Tyro Construction owes liquidated damages of $1,267.97 by multiplying the unpaid welfare and pension contributions, which total $8,453.13, by 15%.

27.     Pursuant to the Contributions Collection Policy, Tyro Construction has been assessed interest on the unpaid welfare and pension contributions at a rate of 9% per annum.

28.     Mid Central Operating Engineers Health and Welfare Fund has calculated that Tyro Construction currently owes interest of $781.63, by multiplying the unpaid welfare and pension contributions, which total $8,453.13, by 9%, then dividing the resulting number by 365 to get a per day charge, and then by multiplying this per day charge by 375 days late, which was determined by counting the days from June 1, 2024 through June 11, 2025.

29.     Interest owed by Tyro Construction on unpaid welfare and pension contributions continues to accrue at a rate of 9% per annum.

30.    Mid Central Operating Engineers Health and Welfare Fund has calculated that Tyro Construction currently owes additional interest after June 11, 2025 of $360.59, by multiplying the unpaid welfare and pension contributions, which total $8,453.13, by 9%, then dividing the resulting number by 365 to get a per day charge, and then by multiplying this per day charge by 173 days late, which was determined by counting the days from June 12, 2025 through December 1, 2025.

31.    Tyro Construction has a credit of $8,851.56 for a payment recovered from Path Construction Company, Inc., the general contractor who retained Tyro Construction as a subcontractor to perform work during the months of April and May of 2024, under a separate state court bond claim action that was filed after the pending federal court case we filed.

32.    Tyro Construction owes the Funds, after all just credits, exclusive of attorneys' fees and costs, the amount of $6,115.84 for the hours of work performed by its employees who performed hours of covered work in April and May of 2024, as itemized below:

| | |
|---|---|
| Contributions: | $12,703.12 |
| Liquidated Damages (Unpaid Contribution): | $ 1,267.97 |
| Interest (Unpaid Contributions): | $   648.23 |
| Interest (Unpaid Contributions): | $   348.08 |
| Credit: | ($ 8,851.56) |
| | -------------- |
| | $  6,115.84 |

33.    Pursuant to applicable provisions of ERISA, the collective bargaining agreement, and the trust agreements, Tyro Construction, Inc. is liable for reasonable attorneys' fees, court costs and all other reasonable expenses incurred by the Funds in the collection of delinquent contributions.

34.     Tyro Construction's persistent failure to report hours worked by its employees and remit the required contributions owed to the Funds directly and foreseeably resulted in the Funds incurring significant legal fees and costs. These expenditures were necessitated by the defendant's ongoing noncompliance with its contractual and statutory obligations, as well as the corresponding need to safeguard the rights and benefits of the Funds' participants and beneficiaries. Had the defendant complied in a timely manner with the requirements of the collective bargaining agreement and the governing trust documents, the substantial resources devoted to addressing this matter would not have been required. Moreover, once litigation commenced, the defendant engaged in conduct that further delayed the proceedings and substantially increased the attorney time necessary to prosecute this action, thereby compounding the legal fees and costs borne by the Funds.

35.     Based on my experience as Bookkeeping Supervisor in coordinating the collection of delinquent employer contributions, and my familiarity with the costs of comparable employer collection files, and my knowledge of the extent of legal work that was required to secure relief and the nature of the proceedings involved in this case, the attorneys' fees and costs incurred were both reasonable and necessary to enforce the Funds' contractual and statutory rights.

36.     The reasonableness and necessity of the attorneys' fees and costs incurred by the Funds are further documented and substantiated in attorney fee affidavit that is attached as Exhibit "3" to the Funds' Motion for Summary Judgment.

37.     Each of the statements set forth herein is true and correct to the best of my personal knowledge, and if I were called to as a witness to testify at trial, I could and would competently testify to the facts and matters stated herein.

FURTHER AFFIANT SAYETH NOT.



JACKIE ELLINGER

SUBSCRIBED and SWORN to a Notary Public this  11  day of December 2025.



PAM MATHERLY
Commission Number NP0750696
My Commission Expires
08/07/2031



NOTARY PUBLIC