IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MID CENTRAL OPERATING ENGINEERS HEALTH & WELFARE FUND et. al,<br>    Plaintiffs,<br><br>v.<br><br>TYRO CONSTRUCTION INC.,<br>    Defendant. | Case No. 1:24-cv-01309-JEH-RLH |

**Order**

Now before the Court is the Plaintiffs' Motion for Summary Judgment (D. 14).[1] For the reasons set forth *infra*, the Plaintiffs' Motion for Summary Judgment is granted, and the Court awards the Plaintiffs a total amount of $31,212.55. The Clerk is directed to enter judgment in favor of the Plaintiffs and close the case.

**I**

On August 30, 2024, the Plaintiffs filed the Complaint. (D. 1). On May 2, 2025, the Court entered Default. 05/02/2025 Text Order. On May 15, 2025, the Plaintiffs filed a Motion for Default Judgment and Memorandum in Support (D. 6 & 7) which the Court denied because it did not comply with Rule 54(c). *See* 06/09/2025 Text Order. Subsequently, on June 16, 2025, the Plaintiff filed an Amended Complaint (D. 9). On July 16, 2025, the Defendant filed an Answer (D. 10). Thereafter, the Plaintiffs filed their Motion for Summary Judgment on December 18, 2025. (D. 14). The Defendant did not respond to the Motion for

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

Summary Judgment (D. 14) and has not filed any motion with the Court. Accordingly, the matter is now fully briefed.

## II

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "The parties must support their assertions that a fact cannot be or is genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .'" *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. "The

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 250.

In this case, because the Defendant did not respond to the Motion for Summary Judgment (D. 14), the Court will treat the Plaintiffs' version of the facts as undisputed for purposes of ruling on the Motion. FED. R. CIV. P. 56(e)(2); *see also* Civil LR 7.1(D), 7.1(D)(2)(b)(6). The Court may also grant the Motion if the movant demonstrates it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(e)(3).

### III

"This is a civil action brought under the Employee Retirement Income Security Act of 1974" ("ERISA") and the "Labor Management Relations Act of 1947" ("LMRA") on behalf of Plaintiffs who represent a "group of employee benefit funds who provide health, retirement, training and other collectively bargained benefits to the employees of the defendant." (D. 14 at ECF p. 2). These benefits "are administered in accordance with their governing trust agreements, and governing provisions of ERISA and the LMRA." *Id.* The cause of action arises pursuant to 29 U.S.C. §§ 1132 and 1145 and is aimed at recovering "delinquent contributions and related amounts the defendant is obligated to pay to the plaintiffs under the terms of a collective bargaining agreement, the plaintiffs' respective trust agreements," and pursuant to the ERISA and the LMRA. *Id.* In particular, Plaintiffs state that the Defendant owes $12,703.12 in unpaid contributions for "covered work performed during April and May 2024" and "is obligated to pay liquidated damages of $1,267.97, interest of $996.31, and reasonable attorneys' fees and costs of $25,096.71 as provided under the plaintiffs' trust agreements and plan policies, as well as governing provisions of ERISA." *Id.*

at ECF p. 3. "In total, after crediting defendant $8,851.56 for a payment received after the filing of the amended complaint as part of a separate court lawsuit", Plaintiffs seek judgment in their favor in the amount of $31,212.55. *Id.*

The "ERISA requires employers to contribute to employee-benefit funds pursuant to the terms of a collective bargaining agreement." *Operating Eng'rs Loc. 139 Health Benefit Fund v. Lake Effect Constr. Inc.*, 2025 WL 1617407, at *1 (E.D. Wisc. May 13, 2025) (citing 29 U.S.C. § 1145). "In the event an employer fails to fulfill its obligation, a participant or beneficiary may commence litigation." *Id.* (citing 29 U.S.C. § 1132(a)(1)(B)). "Employee benefit trust funds, like the [P]laintiffs in the instant action," have "the ability to enforce the agreement in their own right." *Cent. States v. Gerber Truck Serv., Inc.*, 870 F. 2d 1148 (7th Cir. 1989). The Defendant, Tyro Construction ("Tyro"), is an "employer" "engaged in an industry within the meaning of 29 U.S.C. §§ 1002(5), (11), (12), and (14)"; Tyro is also bound by a collective bargaining agreement ("CBA") and other trust agreements ("TAs"). (D. 14 at ECF p. 5). Pursuant to the CBA and the TAs, Tyro was required "to pay contributions to plaintiffs for certain hours of work performed by its employees" and "to prepare and submit each month completed contribution reporting forms" which "provide information needed in order to accurately assess the contributions and other amounts due and payable" to Plaintiffs. *Id.* at ECF p. 5-6. Tyro is delinquent in doing both. *Id.* at ECF p. 6-7. In particular, Plaintiffs claim that in April and May of 2024, Tyro "performed construction work involving I-80 in Knox County, Illinois" ("I-80 Project") which "was covered work under the [CBA] and gave rise to an obligation to pay contributions" for each hour of work performed by its employees.[2] *Id.* at ECF p. 7. Tyro "failed to submit Monthly Reports" and "failed to pay contributions" owed "for work performed by the Employees on the

---

[2] Plaintiffs claim 312.50 "hours of Covered Work" at a "total contribution rate [of] $40.65 per hour" which equates to a sum of $12,703.13 in total contributions owed. (D. 14 at ECF p. 10).

4

I-80 Project in April and May of 2024". *Id.* at ECF p. 8. As such, Tyro "breached the provisions of the [CBA] and [TAs]." *Id.* In addition, under the Contributions Collection Policy ("CCP"), "an employer is assessed liquidated damages equal to 15% of the unpaid welfare and pension contributions" along with interest "at a rate of 9% per annum, which accrues from the date the welfare and pension contributions are due until the welfare contributions are paid." *Id.* Pursuant to the TAs and ERISA, Tyro is "liable for reasonable attorneys' fees, court costs and all other reasonable expenses" in the collection of delinquent contributions. *Id.* at ECF p. 9.

### A

"The plaintiffs include a group of employee benefit funds that are each administered pursuant to the terms and provisions of certain agreements and declarations of trust" that are "maintained in accordance with the provisions of the ERISA and the LMRA". *Id.* at ECF p. 13. One of the named Plaintiffs, "[t]he Mid Central Fund[,] acts as a collection agent and point of receipt for the other named plaintiffs and is authorized to collect contributions and other amounts owed to them under applicable collective bargaining agreements". *Id.* at ECF p. 14. Tyro was one such employer that was "obligated to make contributions . . . under the terms of the plan or under the terms of a collectively bargained agreement" and, accordingly, was required to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. To that end, the "Mid Central Fund calculated that the defendant's employees performed 312.50 hours of covered work during the months of April and May of 2024 on the I-80 Project" and under the CBA "the total contribution rate for each hour of covered work on the I-80 Project was $40.65, consisting of the following components: Welfare Fund ($12.60), Pension Fund ($14.45), 649 Apprenticeship Fund ($1.80), Annuity ($9.70), Upgrade Fund ($1.80), Industry

Advancement Fund ($0.20), and District IAA Fund ($0.10)" for a sum total of $12,703.13. (D. 14 at ECF p. 15-16).[3] Based on the Court's review of the materials and affidavits provided by the Plaintiffs in this case, and on the Defendant's failure to respond, the Court concludes that the Plaintiffs are entitled to recover unpaid contributions totaling $12,703.13 as a matter of law. Indeed, it is well established that § 1145 "requires employers to contribute to funds according to the terms and conditions of the CBA that generated the obligation" and that "funds can sue for statutory and contractual violations using [such] provisions, as the Fund did here." *Cent. States v. Gerber Truck Serv., Inc.*, 870 F. 2d 1148 (7th Cir. 1989)

**B**

Furthermore, "[p]ursuant to the trust agreements of the plaintiffs, and the plaintiffs internal policies and procedures, including the Contributions Collection Policy, [the] defendant owe[s] liquidated damages and interest to the plaintiffs for contributions that are not paid when due". (D. 14 at ECF p. 16-17). And, as previously discussed, § 1145 requires employers such as Tyro to make contributions in accordance with the respective CBA and TAs; when judgment is reached in favor of the plan under § 1145, then § 1132(g)(2) requires the award of liquidated damages and interest subject to certain constraints. *See* 29 U.S.C. § 1132(g)(2). In this case, because the Plaintiffs have successfully shown they are entitled to judgment under § 1145, they are also entitled to liquidated damages and interest on the unpaid contributions under § 1132(g)(2). *See Lab.'s Health and Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539, 547 (1988) (discussing "a mandatory award of prejudgment interest plus liquidated damages in an amount at least equal to that interest, as well as

---

[3] "The [D]efendant is entitled to a credit of $8,851.56 for a payment recovered from Path Construction Company, Inc., the general contractor who retained Tyro Construction as a subcontractor to perform work during the months of April and May of 2024, under a separate state court bond claim action that was filed after the pending federal court case". (D. 14 at ECF p. 16).

attorney's fees and costs"). However, § 1132(g)(2)(C)(ii) places a cap on liquidated damages that cannot exceed twenty percent of the unpaid contributions.

Here, the CCP passes muster. It establishes liquidated damages in an amount equal to fifteen percent of the total unpaid contributions—the sum of $3,937.50 in unpaid welfare contributions and $4,515.63 in unpaid pension contributions multiplied by fifteen percent—or $1,267.97 owed in liquidated damages. (D. 14 at ECF p. 17-18). Furthermore, "[p]ursuant to the Contributions Collections Policy, Tyro Construction was assessed interest on the unpaid welfare and pension contributions at a rate of [nine percent] per annum" which the Plaintiffs have calculated "by multiplying the unpaid welfare and pension contributions, which total $8,453.13, by [nine percent], then dividing the resulting number by 365 to get a per day charge, and then multiplying this per day charge by 375 days late, which was determined by counting the days from June 1, 2024 through June 11, 2025". *Id.* at ECF p. 18. However, because interest continued to accrue, Plaintiffs calculated that Tyro "owes additional interest after June 11, 2025 of $360.59" by using the same per diem rate and multiplying it by an additional 173 days of delinquency "which was determined by counting the days from June 12, 2025 through December 1, 2025". *Id.* For those reasons, the Plaintiffs are entitled to both interest and liquidated damages as a matter of law.

C

Pursuant to the same TAs and applicable provisions of ERISA, Tyro is also "liable for reasonable attorneys' fees, court costs and all other reasonable expenses incurred by the Funds in the collection of delinquent contributions." *Id.* at ECF p. 19. That is because any employer obligated to pay certain fringe contributions covered by § 1145, and who fails to do so, is subject to § 1132(g)(2)(D). *See* 29 U.S.C. § 1332(g)(2)(D). That provision entitles a litigant who is successful under § 1145 to recover attorney's fees and costs, the award of which is mandatory. *See Lab.'s*

7

*Health and Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 547 (1988). Because those facts are not in dispute, and because the Court has already determined the Plaintiffs are entitled to judgment as a matter of law with respect to their claim under § 1145, Plaintiffs are also entitled to recover attorney's fees and costs. *See id.*

In this case, Plaintiffs explain that Tyro "ignored written payment demands" which forced them to "initiate federal litigation and pursue a bond claim and related state-court action to protect plan assets." (D. 14 at ECF p. 20). Furthermore, the "defendant failed to respond to discovery or Requests for Admissions" and "declined multiple opportunities to stipulate to judgment, which would have resulted in a more cost-efficient resolution to this matter." *Id.* Given these delays, among other complications involved in the proceedings, "the plaintiffs incurred attorneys' fees and costs in the sum of $25,096.71". *Id.* at ECF p. 21. Those fees are reasonable under the circumstances and the Plaintiffs are entitled to them as a matter of law.

### IV

In sum, Plaintiffs seek a total of $31,212.55, as itemized in relevant part below:

- Contributions:                                      $12,703.12
- Liquidated Damages (Unpaid Contribution):           $1,267.97
- Interest (Unpaid Contribution):                     $996.31
- Attorney's Fees and Costs:                          $25,096.71
- Credit:                                             ($8,851.56)
- Total                                               $31,212.55

V

For the reasons set forth *supra*, the Court finds the Plaintiffs are entitled to judgment as a matter of law on its claim. Therefore, the Court grants the Plaintiffs' Motion for Summary Judgment (D. 14), and awards the Plaintiffs a total amount of $31,212.55. The Clerk is directed to enter judgment in favor of the Plaintiffs and close the case.

*It is so ordered.*

Entered on February 5, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE